**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RAHEEM LA'MONZE PLATER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-21-1092-HE** |
| | ) |
| **STEVEN HARPE, Director,**[1] | ) |
| | ) |
| **Respondent.** | ) |

## REPORT AND RECOMMENDATION

Petitioner Raheem La'Monze Plater ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 4). Petitioner filed an Amended Brief (Doc. 49) and other supplemental briefing (Docs. 11, 41, 43) in support of the Petition. Respondent filed a response (Doc. 19), along with portions of the record, including a preliminary hearing transcript (P. Hr. Tr.), the jury trial transcript (Trial Tr.), exhibits (State's Ex.), the sentencing transcript (S. Tr.), and the state trial court record (R.). (Doc. 21).[2] For the

---

[1] Steven Harpe is now the Director of the Oklahoma Department of Corrections and is substituted as the properly named respondent under 28 U.S.C § 2242 and Rule 2(a). *See* Rule 2(a), Rules Governing 2254 Cases in the United States District Courts ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the state court records will refer to the original pagination.

reasons set forth below, the undersigned recommends that Petitioner's application for habeas relief be **DENIED**.

## I.    Factual Summary

At the time of the events at issue, Petitioner was an adult resident of California, temporarily in the state of Oklahoma, with multiple prior felony convictions. (Trial Tr., at 197-201). A.C. was a 15-year-old ward of the state of Oklahoma who had run away from her group home in early 2018. (*Id*. at 99; State's Ex. 2).

Law enforcement was unable to find A.C. for either the preliminary hearing or the trial. (Trial Tr., at 247). A.C.'s statements to Lawton Police Officer Dustin Kellog and to Sexual Assault Nurse Examiner ("SANE") Rhonda Finney were admitted, as well as information she gave to Lawton Police Detective Rachel Flores during a forensic interview. (*See infra*).

Officer Kellog testified that, on the evening of September 5, 2018, he responded to a call of "a juvenile in fear for her life" at an area near an apartment complex. (Trial Tr., at 110-13). He found A.C., who was "very emotional, crying, upset." (*Id*. at 113). A.C. told Officer Kellog that "she was in fear of a man that she had been sold to, of shooting her." (*Id*.) A.C. also told Officer Kellog that "she had been there a couple of days and had been drugged and sold to this man and that he was performing sexual acts on her." (*Id*. at 113-14).

Detective Flores testified that she conducted a forensic interview with A.C. that same night and returned to the area where the officers made contact with her. (*Id*. at 127). Detective Flores explained that she had A.C. point to the apartment building where she had

been held captive, and when Detective Flores knocked on one of the doors, Petitioner answered. (*Id.* at 128). Detective Flores identified Petitioner as the man who had sexually assaulted A.C. based on the physical description given by A.C. during the forensic interview. (*Id.*) Officer Kellog then transported A.C. to a facility to receive a sexual assault examination. (*Id.* at 114-15, 127).

The sexual assault examination was conducted by SANE Finney. (*Id.* at 95). SANE Finney testified that A.C. stated she and three other girls had run away from the group home where they were housed, when they met a man named Vince who asked if they smoked "cigarettes, weed, or anything else." (*Id.* at 99). A.C. said yes, and she and Vince did two lines of an unknown drug, before the girls went with him to his house. (*Id.*) A.C. explained that then things "became a blur." (*Id.*) A.C. stated that "Vince was trying to get with her, touching her, shooting her up, giving her more lines" and threatening to kill her and another girl. (*Id.*)

SANE Finney testified that A.C. said she was then taken to a house owned by a man named Leroy, and that Leroy "was going to rape her, but some guy came in and paid $2,000 for her so she went with him." (*Id.*) SANE Finney further testified:

> They had oral and vaginal intercourse in his car. Then they went to the Motel 6 and continued there. She left the next day, but he found her and brought her back and forced her to have sex with him again repeatedly. She states he took her to Texas and everywhere to make deposits. They returned to his trap house where he continued to have sex with her intermittently. They smoked weed. He wanted her to perform oral sex, and she refused. He became very angry. So she ended up doing it anyway. At one point he went to a back room. When he demanded sex again from the back room, [A.C.] ran out of the house and found an old man and told him to call 911. He came running after her and said, "Hey, you forgot your shoes." Then the cops came.

3

(*Id*. at 99-100).

Petitioner testified at trial.  (*Id*. at 197).  Petitioner admits that he had sex with A.C. on multiple occasions, but states he believed she was an adult.  (*Id*. at 218).   In his testimony, Petitioner testified that he came to Oklahoma to be around his girlfriend in her last trimester of pregnancy.  (*Id*. at 201).  Petitioner claims that he first encountered A.C. at Leroy's house on September 2, 2018, in Lawton, Oklahoma.  (*Id*. at 201, 205, 213). Petitioner claims A.C. "said she didn't want to be in the house," so Petitioner threatened Leroy with a gun and removed A.C. from the home.  (*Id*. at 205).  Upon entering the car, Petitioner claims A.C. told him she was homeless, that her parents (about whom he inquired) were "gone," and that she was eighteen.  (*Id*. at 205-06).  Petitioner claims he took A.C. first to his girlfriend's home and then to the Motel 6 in Oklahoma City, Oklahoma.  (*Id*. at 206-07).  Petitioner then had sex with A.C. on multiple occasions between September 3, 2018, and September 5, 2018, when he was arrested.  (*Id*. at 213, 218).  Petitioner testified that he "didn't find out [A.C.] was 15 until six hours before [he] got arrested."  (*Id*. at 214).

Petitioner's cell phone contained two videos of Petitioner having sex with A.C.  (*Id*. at 148-151; State's Ex. 8).  Petitioner's cell phone also contained several text messages indicating his intention to have sex with a minor and knowledge that A.C. was a minor at the time of their sexual encounters. (Trial Tr., at 161-165; State's Ex. 9).  On September 2, 2018, before Petitioner's first encounter with A.C., Petitioner received the text: "So, bro, you still got the youngster?"  (Trial Tr., at 161; State's Ex. 9).  Petitioner replied, "Nah,

4

she ran off. I heard you got another. I just got my phone." (Trial Tr., at 162; State's Ex. 9). Petitioner then indicated that he was looking for "another one" and "something younger" "with more meat in her bones." (Trial Tr., at 163; State's Ex. 9). Petitioner then received the text, "Listen. If you are coming today, that will be great" (Trial Tr., at 164; State's Ex. 9). Petitioner gave the assurance that he would "bring the money in the morning." (Trial Tr., at 165; State's Ex. 9). He later received a text saying, "Now you owe me two grand." (Trial Tr., at 166; State's Ex. 9). Detective Flores testified that the information in Petitioner's text messages corroborates the account that A.C. gave in her forensic interview that Petitioner agreed to "buy" A.C. for $2,000. (Trial Tr., at 160-170).

## II.    Procedural History

The State charged Petitioner in Comanche County District Court, Case No. CF-2018-490, with one count of rape in the second degree (Count One), and one count of possession of juvenile pornography (Count Two). (R., at 31). At the conclusion of the two-day trial, the jury found Petitioner guilty of both counts and recommended life imprisonment on each. (Trial Tr., at 254; R., at 133-34). The trial judge sentenced Petitioner to life imprisonment on each count, to run consecutively. (S. Tr., at 6). Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals ("OCCA") and requested an evidentiary hearing on his claim of ineffective assistance of trial counsel. (Doc. 19, at Exs. 1-2). The OCCA affirmed Petitioner's conviction and sentence and denied his application for evidentiary hearing. (*Id*. at Ex. 5, at 34).

Petitioner filed an Application for Post-Conviction Relief in Comanche County District Court. (*Id.* at Exs. 6-7). The court denied the application. (*Id.* at Ex. 8). On

appeal, the OCCA affirmed the decision to deny Petitioner's application. (*Id.* at Ex. 11). Petitioner then filed the instant Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. (Doc. 1). The Petition is at issue.

## III.    Standard of Review

"The standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA') guide [this Court's] review of 28 U.S.C. § 2254 applications." *Wellmon v. Colo. Dep't of Corrs.*, 952 F.3d 1242, 1245 (10th Cir. 2020). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be difficult to meet." *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (internal quotation marks omitted). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (internal quotation marks omitted).

This court "first determine[s] whether the petitioner's claim is based on clearly established federal law." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015). "Only

Supreme Court law announced by the time of the state-court decision on the merits qualifies as clearly established law." *Wellmon*, 952 F.3d at 1245 (internal quotation marks omitted). If clearly established federal law exists, this court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Owens*, 792 F.3d at 1242. A state court's decision is contrary to clearly established federal law if it "comes to a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Court has . . . on materially indistinguishable facts." *Wellmon*, 952 F.3d at 1245 (internal quotation marks omitted). Notably, "[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be diametrically different and mutually opposed to the Supreme Court decision itself." *Owens*, 792 F.3d at 1242 (internal quotation marks omitted).

"[T]he state court's decision is an unreasonable application of Supreme Court Law" if it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Wellmon*, 952 F.3d at 1245 (internal quotation marks omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was objectively unreasonable." *Owens*, 792 F.3d at 1242 (internal quotation marks omitted). So, to qualify for habeas relief on this prong, the petitioner must show "there was no reasonable basis for the state court's determination." *Id.* at 1243 (internal quotation marks omitted). "In other words, so long as fairminded jurists could disagree on the correctness of the state court's decision, habeas relief is unavailable." *Id.* (internal quotation marks omitted); *see also Harrington*,

562 U.S. at 103 ("As a condition for obtaining [federal habeas relief], a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

This court "must accept a state-court [factual] finding unless it was based on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Davis v. Ayala*, 576 U.S. 257, 271 (2015) (quoting 28 U.S.C. § 2254(d)(2)). This court presumes the factual determination to be correct; a petitioner can only rebut this presumption with clear and convincing evidence. *See id.*; *see also* 28 U.S.C. § 2254(e)(1).

## IV.  Analysis

Petitioner raises nine grounds for relief, alleging:

- (Ground One) statements made by A.C. to SANE Finney were inadmissible hearsay, the admission of those statements at trial violated Petitioner's rights under the Confrontation Clause, and SANE Finney violated Oklahoma law by prescribing medication to A.C. and by conducting the exam in a church (Doc. 1, at 6-7; Doc. 49, at 8-11);

- (Ground Two) Petitioner's sentences were improperly enhanced by his prior felony convictions in California (Doc. 1, at 7-9; Doc. 49, at 12-15);

- (Ground Three) the State solicited false testimony and false evidence from Detective Flores (Doc. 1, at 9-10; Doc. 49, at 15-22);

- (Ground Four) insufficiency of the evidence due to the alleged inadmissibility of the SANE report and Petitioner's testimony (Doc. 1, at 11; Doc. 49, at 22-24);

- (Ground Five) ineffective assistance of appellate counsel due to lack of access to the law library (Doc. 1, at Ex. 1, at 1; Doc. 49, at 24-25; *see also* Docs. 41, 43);

- (Ground Six) ineffective assistance of trial counsel in failing to present certain evidence to discredit A.C.'s testimony in the SANE report, to obtain witnesses

and evidence, to communicate with Petitioner, and in lying to Petitioner regarding the admissibility of evidence (Doc. 1, at Ex. 1, at 1; Doc. 11, at Ex. 1, at 1-2; Doc. 49, at 26-37);

- (Ground Seven) statements made by A.C. to Officer Kellog were inadmissible hearsay and the admission of those statements at trial violated Petitioner's rights under the Confrontation Clause (Doc. 1, at Ex. 1, at 2; Doc. 11, at Ex. 1, at 3; Doc. 49, at 29-31);

- (Ground Eight) Petitioner was denied the right to present a complete defense due to trial counsel's failure to present exculpatory evidence and witnesses (Doc. 1, at Ex. 1, at 2-3; Doc. 11, at Ex. 1, at 4-8; Doc. 49, at 32-36); and

- (Ground Nine) the State failed to provide all exculpatory and impeaching evidence, specifically the recording of A.C.'s interview with SANE Finney (Doc. 1, at Ex. 1, at 3; Doc. 49, at 36-37).

Respondent contends that certain claims made in Grounds One, Four, and Six should be denied on the merits. (Doc. 19, at 14-49). Further, Respondent argues certain claims made in Grounds Four, Six, and Eight were not exhausted in state court and should be denied because those claims would be procedurally barred if Petitioner returned to state court to exhaust them. (*Id.* at 49-57). Finally, Respondent argues that the remaining claims raised in Grounds One, Two, Three, Five, Six, Seven, Eight, and Nine are procedurally barred from federal habeas review. (*Id.* at 57-69; *see also* Docs. 42, 46).

As set forth fully below, Petitioner is not entitled to relief on any of his claims.

**A.      Ground One: Petitioner Is Not Entitled to Relief on His Claim That SANE Finney's Testimony Contained Inadmissible Hearsay And Violated His Rights Under The Confrontation Clause.**

In Ground One, Petitioner claims (in part)[3] that statements made by A.C. to SANE Finney were inadmissible hearsay and admission of those statements at trial violated his rights under the Confrontation Clause. (Doc. 1, at 6-7; Doc. 49, at 8-11). Petitioner raised this claim on direct appeal (Doc. 19, at Ex. 1, at 10-16), and the OCCA denied it on the merits (*id*. at Ex. 5, at 4-8). For the reasons stated below, the undersigned recommends denial of habeas relief on this ground.

**1.      The OCCA's Ruling**

On direct appeal, the OCCA rejected Petitioner's challenge regarding SANE Finney's testimony, holding:

> In Proposition I, [Petitioner] contends that statements made by the victim, A.C., to the SANE nurse were inadmissible hearsay and admission of the statements at trial violated his rights under the Confrontation Clause. This objection was raised before the trial court and overruled with no explanation.
>
> We typically review a trial court's decision to admit evidence for an abuse of discretion. "However, 'the determination of whether admission of hearsay evidence violates the Confrontation Clause . . . is a question of law we review *de novo*.'" *Tryon v. State*, 2018 OK CR 20, ¶ 38, 423 P.3d 617, 632 (quoting *Hanson v. State*, 2009 OK CR 13, ¶ 8, 206 P.3d 1020, 1025).
>
> Both [Petitioner] and the State cite to *Thompson v. State*, 2019 OK CR 3, 438 P.3d 373 – [Petitioner] to distinguish it from his case and the State as support for admission of the statements. The issue before this Court in *Thompson* was whether the Sixth Amendment's Confrontation Clause prohibited the prosecution from introducing statements made by the victim to the SANE nurse because the victim was unavailable for trial and the defendant never

---

[3] Petitioner also contends that SANE Finney violated Oklahoma law by prescribing medication to A.C. and by conducting the exam in a church. (Doc. 49, at 8-11). Those claims are procedurally barred, as discussed below in Section IV.D.

had an opportunity to cross-examine her. *Id*., 2019 OK CR 3, ¶ 8, 438 P.3d at 376. This Court recognized that "[t]he Confrontation Clause guarantees an accused the right to confront witnesses against him. U.S. Const. amend VI. In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the Supreme Court held the Sixth Amendment prohibits the introduction of testimonial statements by a non-testifying witness, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." *Id*.[,] 2019 OK CR 3, ¶ 10, 438 P.3d at 376. The Court went on to say:

> Under current Confrontation Clause jurisprudence, however, admissibility of [the victim's] out-of-court statements to the SANE nurse hinges on whether the statements were testimonial under what is known as the "primary purpose" test. . . A reviewing court must determine whether, in light of all the circumstances, viewed objectively, the "primary purpose" of the conversation was to create an out-of-court substitute for trial testimony. . . . Admission of an out-of-court statement does not violate the Confrontation Clause unless its primary purpose was testimonial.

*Id*. (internal citations omitted).

This Court recognized that "SANE nurses perform both a medical and investigatory function in almost every interaction with an alleged sexual assault victim" and "[i]t is the duality of the SANE nurse's role that calls into question the primary purpose of the sexual assault examination." *Id*., 2019 OK CR 3, ¶ 11, 438 P.3d at 377.

To determine the "primary purpose" of the victim's statements to the SANE nurse, this Court said that the evidence in each case is to be considered objectively with a focus on the following factors:

> 1) the objective intent of the SANE nurse and the alleged victim; 2) the classification of the SANE nurse as either a medical professional or a law enforcement agent; 3) the setting of the exam; 4) whether the alleged victim's statement contained specific accusations; 5) the amount of time that elapsed between the exam and the assault; 6) whether the SANE nurse participated in the medical treatment of the victim; 7) whether a law enforcement officer was present; 8) the primacy of medical purpose; and 9) the intention underlying the victim's answers.

11

2019 OK CR 3, ¶ 13, 438 P.3d at 377.

Considering all the relevant circumstances in this case in light of the factors set forth in *Thompson*, we find the testimony supports a finding that A.C.'s statements were made to the SANE nurse for the primary purpose of medical treatment rather than creating evidence for [Petitioner's] prosecution[.]

The SANE nurse in this case testified that she was a registered nurse, having been so for 30 years. She said she had been a SANE nurse for the past 3 ½ years. She was employed by the Help Advocacy Center for Southwest Oklahoma in Lawton and testified that the primary purpose of the Center was to treat sexual assault victims. She explained that the sexual assault examination of A.C. contained both an interview and a physical examination. The nurse testified that she asked A.C. a series of questions and then allowed A.C. to describe in her own words the circumstances which resulted in her being at the Center. The physical examination consisted of a "head to toe assessment" of injuries as well as a pelvic examination and the taking of blood, urine, and DNA samples.

Based upon the information given to her by A.C., and the results of her physical examinations, the nurse prescribed antibiotics in case A.C. had been exposed to any sexually transmitted diseases and emergency contraceptive medication. She also testified that she always recommended that the patient follow up with their primary care physician.

There is no denying the investigative component of the SANE interview/examinations. The nurse testified that evidence she collected was sent to law enforcement. She also admitted that there was a police officer present during the examination. However, there is no indication that the officer or any law enforcement representative participated in the interview or examinations in any way. Further, the fact that results of the examination were ultimately reported to the police, does not detract from a finding that the primary reason the SANE nurse examined A.C. was for medical purposes.

Here, the record is sufficient to find the sexual assault examination served the primary purpose of furnishing medical care, making A.C.'s statements about the assaults and her identification of [Petitioner] as her attacker admissible under the medical-diagnosis hearsay exception, and non-testimonial for purposes of the Confrontation Clause. Therefore, introduction of A.C.'s statements at trial did not violate [Petitioner's] right to confrontation. The district court did not err in admitting A.C.'s hearsay

statements to the SANE nurse under the medical treatment hearsay exception. 12 O.S.2011, § 2803(4).  This proposition is denied.

(Doc. 19, at Ex. 5, at 4-8).

### 2.    *Crawford v. Washington* is the Clearly Established Law Regarding the Confrontation Clause.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S.Const. amend. IV.  In *Crawford v. Washington*, 541 U.S. 36, 53–54, (2004), the Supreme Court limited the Confrontation Clause's reach to "testimonial statements."  The Court held that in order for testimonial statements to be admissible, the out-of-court witness must be unavailable and the defendant must have had a prior opportunity to cross examine the witness.  *Id.*  In *Davis v. Washington*, 547 U.S. 813 (2006), and *Hammon v. Indiana*, 547 U.S. 813 (2006), which were decided together, the Supreme Court defined more precisely the distinction between testimonial statements and non-testimonial statements. The Supreme Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis*, 547 U.S. at 822.

In *Michigan v. Bryant*, 562 U.S. 344, 358 (2011), the Supreme Court affirmed that when "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the

13

[Confrontation] Clause."  To determine the primary purpose of an interrogation, courts must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties."  *Id.* at 359.  In making this determination, the "existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances."  *Id.* at 370.  However, "the existence *vel non* of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'"  *Id.* at 374.

### 3.   The OCCA Reasonably Applied the Clearly Established Law.

Petitioner identifies no Supreme Court case law clearly establishing that statements made to medical personnel, as opposed to law enforcement, are testimonial.  *See Ohio v. Clark*, 576 U.S. 237, 246 (2015) (explaining that statements to individuals who are not law enforcement officers "are much less likely to be testimonial than statements to law enforcement officers"); *Giles v. California*, 554 U.S. 353, 376, (2008) (explaining that "[s]tatements to friends and neighbors . . . and statements to physicians in the course of receiving treatment" would not be excluded by the Confrontation Clause.)  The absence of clearly established federal law prohibiting the admission of SANE Finney's testimony is fatal to this aspect of Petitioner's claim.  *Grant v. Royal*, 886 F.3d 874, 888-89 (10th Cir. 2018).

Applying the analysis set forth in *Crawford* and its progeny, the circumstances involved here indicate that the primary purpose of SANE Finney's exam was to respond to a medical emergency.  SANE Finney examined A.C. on the night of Petitioner's arrest.

(Trial Tr., at 95, 114-15, 127).  SANE Finney conducted an interview with "medical questions" "pertaining to the assault" and a physical exam that included "[a] head to toe assessment . . . where [SANE Finney] examine[d] her for any injuries, any bruises, any marks on her body that may have occurred during the assault."  (*Id*. at 96).  SANE Finney obtained a blood test and a urine specimen, "for a pregnancy test."  (*Id*.)  SANE Finney gave A.C. both antibiotics and Plan B, "emergency contraceptive pills because [A.C.] indicated that [Petitioner] did not wear a condom."  (*Id*. at 97).

SANE Finney testified that her interview consisted of "medical questions" about what caused her injuries in conjunction with providing her medical treatment.  (*Id*. at 96). Thus, SANE Finney's questions were designed to assess the victim's medical situation, not to "create a record for trial," and are therefore outside the scope of the Confrontation Clause. *Bryant*, 562 U.S. at 358.

The OCCA reasonably applied Supreme Court precedent to determine that A.C.'s statements to SANE Finney were non-testimonial, and their admission at trial therefore did not violate the Confrontation Clause. Accordingly, Petitioner is not entitled to relief on this claim raised in Ground One.

**B.   Ground Four: Petitioner Is Not Entitled to Relief on His Claim Of Insufficiency Of The Evidence.**

In Ground Four, Petitioner claims that the evidence was insufficient to sustain his conviction on Count One.[4]  (Doc. 1, at 11; Doc. 49, at 22-24).  Petitioner raised this claim

---

[4] In the Petition, Petitioner contends that the evidence was insufficient to sustain "both counts utilized for conviction."  (Doc. 49, at 22).  To the extent Petitioner intends to apply

on direct appeal (Doc. 19, at Ex. 1, at 17-18), and the OCCA denied it on the merits (*id*. at

Ex. 5, at 9). For the reasons stated below, the undersigned recommends denial of habeas

relief on this ground.

### 1.    The OCCA's Ruling

On direct appeal, the OCCA rejected Petitioner's argument regarding sufficiency of

the evidence to support his conviction on Count One, holding:

> In Proposition II, [Petitioner] contends the evidence was insufficient to prove
> A.C. was under 16 years old – an essential element of the second degree rape
> charge. *See* 21 O.S.Supp. 2017, § 1111(A)(1); 21 O.S. Supp. 2014, §
> 1114(6)(B). Challenges to the sufficiency of the evidence are reviewed in
> the light most favorable to the prosecution to determine whether any rational
> tier of fact could have found the essential elements of the crime charged
> beyond a reasonable doubt. *Mitchell v. State*, 2018 OK CR 24, ¶ 11, 424
> P.3d 677, 682. In reviewing sufficiency of the evidence claims, this Court
> does not reweigh conflicting evidence or second-guess the decision of the
> fact-finder; we accept all reasonable inferences and credibility choices that
> tend to support the verdict. *Id*., 2018 OK CR 24, ¶ 11, 424 P.3d at 682. We
> find the evidence sufficient to show that A.C. was 15 years old at the time of
> the charged offenses. This proposition is denied.

(Doc. 19, at Ex. 5, at 9).

### 2.    *Jackson v. Virginia* is the Clearly Established Law Regarding Sufficiency of the Evidence.

Under Supreme Court precedent, the relevant inquiry for a challenge to the

sufficiency of the evidence is "whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

---

this argument to Claim Two of his conviction, that argument is unexhausted and subject to
an anticipatory procedural bar, as discussed in Section IV.E.

(1979). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (internal quotation marks omitted). Thus, courts utilize a "twice-deferential standard" when addressing a sufficiency-of-the-evidence claim on § 2254 habeas review. *Id.*

### 3.  The OCCA Reasonably Applied *Jackson.*

Petitioner argues that the State did not have sufficient evidence to convict him of second degree rape, which requires proof of sexual intercourse with a person who is not a spouse of the defendant and under the age of sixteen. (Doc. 49, at 23); *see* Okla. Stat. tit. 21, § 1111, 1114(B); Instruction No. 4-124, OUJI-CR(2d). Specifically, Petitioner argues that the *admissible* evidence at his trial does not establish that A.C. was under the age of sixteen. (Doc. 49, at 23). The evidence presented at trial included the SANE report listing A.C.'s age as 15. (State's Ex. 2, at 1). The evidence also included Petitioner's own testimony regarding A.C.'s age, that "[he] didn't find out A.C. was 15 until six hours before [he] got arrested." (Trial Tr., at 214). Petitioner argues that both the SANE report and his testimony are inadmissible, (Doc. 49, at 23), but "a reviewing court must consider all of the evidence admitted by the trial court, regardless of whether that evidence was admitted erroneously." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (internal quotation marks and citation omitted). The undersigned therefore finds the OCCA reasonably applied *Jackson* when it found that a rational trier of fact considering the evidence presented at trial could find beyond a reasonable doubt that A.C. was 15 at the time of the crime. Thus, the

17

undersigned recommends denying Petitioner habeas corpus relief on this claim in Ground Four.

**C.       Ground Six: Petitioner Is Not Entitled to Relief on His Claim Of Ineffective Assistance Of Trial Counsel.**

In Ground Six, Petitioner claims (in part)[5] that trial counsel was ineffective for failing to present certain evidence at trial as delineated in Ground Eight, specifically the registration information from Motel 6, a Walmart wire transfer to Petitioner to buy clothes and other personal items, a recording of A.C.'s forensic interview with SANE Finney, and a copy of the key to Crystal Reed's house.  (Doc. 49, at 26-37).  Petitioner raised this claim on direct appeal (Doc. 19 at Ex. 1, at 48-51), and the OCCA denied it on the merits (*id*. at Ex. 5, at 27-32). For the reasons stated below, the undersigned recommends denial of habeas relief on this ground.[6]

**1.       The OCCA's Ruling**

On direct appeal, the OCCA rejected Petitioner's claim that defense counsel was ineffective for failing to present certain evidence, holding:

> In Proposition XI, [Petitioner] contends he was denied the effective assistance of counsel by counsel's failure to present certain mitigating evidence.  He admits his case did not involve a capital trial and that there is no mitigation stage in a non-capital trial.  However, he asserts counsel could have presented a very different picture of the crime to the jury.  He admits

---

[5] Petitioner also raises a number of claims relative to Ground Six that were not decided on the merits by the OCCA, and those claims are addressed in Sections IV.D and IV.E.

[6] Respondent contends that Petitioner raises the failure to present evidence of Petitioner's interview with Detective Flores, (see Doc. 19, at 46), but the undersigned cannot find reference to this argument in any of Petitioner's filings.  Regardless, the undersigned would recommend denial of a claim for ineffective assistance of counsel for failure to introduce Petitioner's police interview under the same rationale as discussed herein.

18

the information would not have changed the guilt/innocence consideration in Count I, but argues it had the potential to significantly decrease the sentences imposed against him.

[Petitioner] alludes to two "groups of items" which he refers to as "exculpatory evidence": 1) registration information from Motel 6; 2) a wire transfer showing money from Demetrius Adkins to [Petitioner] to buy clothes and other personal items; and 3) "text messages showing surprise when [Petitioner] received a text message about A.C. being sold." The "second group of items" referred to "exculpatory videos" and includes: 1) a forensic video of A.C. showing she was under the influence of drugs at the time of the crimes – and thus impeaching the credibility of her claims; and 2) a video of [Petitioner's] interview by Detective Flores. [Petitioner] also refers to a "physical copy of key to Crystal Reed's house" and Ms. Reed's work schedule which he claims would corroborate his trial testimony.

Claims of ineffective assistance are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sanders* [*v. State*], 2015 OK CR 11, ¶ 29, 358 P.3d [280,] 287. In order to show that counsel was ineffective, [Petitioner] must show both deficient performance and prejudice. *Id.* (citing *Strickland*, 466 U.S. at 687).

In *Strickland*, the Supreme Court said there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct, *i.e.*, an appellant must overcome the presumption that, under the circumstances, counsel's conduct constituted sound trial strategy. *Sanders*, 2015 OK CR 11, ¶ 29, 358 P.3d at 287. To establish prejudice, [Petitioner] must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id*. (citing *Harrington v. Richter*, 562 U.S. 86, 111-112 (2011)). When a claim of ineffective assistance of counsel can be disposed of on the ground of lack of prejudice, that course should be followed. *Strickland*, 466 U.S. at 696.

Filed contemporaneously with his appellate brief, is an *Application for Evidentiary Hearing* on his claim of ineffective assistance of counsel. [Petitioner] requests this Court grant an evidentiary hearing so his extra-record claims can be made a part of the record and considered with the remainder of his claims in order to determine whether counsel's representation, as a whole, fell below minimal constitutional standards of effective representation.

Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2020) allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to utilize available evidence which could have been made available during the course of trial. *Frederick v. State*, 2017 OK CR 12, ¶ 166, 400 P.3d 786, 826-827[,] *overruled on other grounds*, *Williams v. State*, 2018 OK CR 15, ¶ 51, n.1., 422 P.3d 752, 762, n.1. Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence. *Id*. The attachments filed in support of a request for an evidentiary hearing are not considered, by reason of their filing with this Court, part of the trial record. *Bland v. State*, 2000 OK CR 11, ¶ 115, 4 P.3d 702, 731; *Dewberry v. State*, 1998 OK CR 10, ¶ 9, 954 P.2d 774, 776. The attachments will be considered only in regards to the application for evidentiary hearing on sixth amendment claims.

In his application, [Petitioner] does not repeat the arguments made in his appellate brief but relies on two (2) attachments to support his request for evidentiary hearing. The first is a sworn affidavit from [Petitioner]. He asserts that certain listed information was "readily available to trial counsel" but not introduced at trial. This list of evidence includes the evidence listed in the appellate brief as set out above as well as several other specific items of evidence. [Petitioner] provides no explanation of the importance of any of this information.

The second attachment is a sworn affidavit from Denise Buthion[,] a[n] employee at the Learning Center in Oklahoma City who states in part that Crystal Reed was also an employee there as of September 2018. A copy of Reed's work schedule from August 28-September 11, 2018 is also attached.

[Petitioner's] self-serving claims contained in his attached affidavit do not show a strong possibility that trial counsel was ineffective and do not warrant remanding the case for an evidentiary hearing on counsel's effectiveness. "Conclusory allegations, standing alone, will never support a finding that an attorney's performance was deficient." *Smith v. State*, 1998 OK CR 20[,] ¶ 8, 955 P.2d 734, 738. Assuming arguendo, the evidence is as [Petitioner] claims, it is easy to see that counsel had strategic reasons for not presenting evidence that would only make his client look worse before the jury. This Court will not second guess matters of trial strategy if there is a reasonable basis for counsel's actions. *Dawkins v. State*, 2011 OK CR 1, ¶

20

20, 252 P.3d 214, 220. Further, as [Petitioner] admits, none of the listed evidence goes to his guilt or innocence in the charged crimes.

In order to meet the clear and convincing standard sufficient to warrant an evidentiary hearing, [Petitioner] must present this Court with evidence, not speculation, second guesses or innuendo. *Lott v. State*, 2004 OK CR 27, ¶ 136, 98 P.3d 318, 351. After thorough consideration of each of [Petitioner's] claims in light of both the evidence offered at trial and materials submitted in support of his Rule 3.11 application, we find that [Petitioner] has not shown clear and convincing evidence suggesting a strong possibility that trial counsel was ineffective for failing to utilize the complained of evidence. [Petitioner] has not shown the strong possibility that counsel's alleged errors resulted in a breakdown of the adversarial process so serious that the trial cannot be deemed to have produced a reliable result. *Id*. [Petitioner's] request to remand for evidentiary hearing under Rule 3.11 is denied.

When we review and deny a request for an evidentiary hearing on a claim of ineffective assistance under the standard set forth in Rule 3.11, we necessarily make the adjudication that [Petitioner] has not shown defense counsel to be ineffective under the more rigorous federal standard set forth in *Strickland*. *Simpson v. State*, 2010 OK CR 6, ¶ 53, 230 P.3d 88, 906. Therefore, the claims of ineffective assistance of counsel raised in the appellate brief, which are the same claims raised in the 3.11 motion are hereby denied. This proposition is denied.

(Doc. 19, at Ex. 5, at 27-32).

### 2.    *Strickland v. Washington* is the Clearly Established Law on Ineffective Assistance of Counsel.

To succeed on his claim of ineffective assistance of counsel, Petitioner must satisfy the standards of *Strickland v. Washington* and show that his attorney's performance was both deficient and prejudicial. 466 U.S. 668, 687 (1984). An attorney's performance is "deficient" when it falls "outside the wide range of professionally competent assistance." *Id.* at 690. The performance is prejudicial when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

21

different." *Id.* at 694. Appellate counsel's failure to raise a claim lacking merit does not amount to constitutionally ineffective assistance under *Strickland. See Cargle v. Mullin*, 317 F.3d 1196, 1202-03 (10th Cir. 2003) ("[I]f the issue is meritless, its omission will not constitute deficient performance.").

However, on habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not "whether . . . counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. Thus, the court must use a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks omitted).

### 3. The OCCA Reasonably Applied *Strickland.*

In denying Petitioner's direct appeal and application for evidentiary hearing, the OCCA held that Petitioner's claims that counsel was ineffective for failing to introduce certain evidence at trial were conclusory and that trial counsel had "strategic reasons for not presenting evidence that would only make his client look worse before the jury." (Doc. 19, at Ex. 5, at 31). The undersigned agrees. Aside from speculating that he might have received a lesser sentence, (Doc. 49, at 28), Petitioner fails to articulate how the outcome of the proceedings could have reasonably been different had the attorneys introduced this evidence at his trial. This court cannot create Petitioner's arguments for him, and conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001). Indeed, such conclusory comments certainly fail to show the OCCA unreasonably applied *Strickland*

22

when it found, in essence, that no prejudice occurred.  *See, e.g., Hamilton v. Bird*, 650 Fed. App'x. 585, 593 (10th Cir. 2016) (finding petitioner's conclusory statements complaining about trial counsel's conduct failed to establish prejudice); *see also Bahney v. Janecka*, 365 Fed. App'x. 941, 943 (10th Cir. 2010) (affirming the district court's finding that petitioner's "claims of ineffective assistance of counsel were conclusory and unsupported and lacked any showing of prejudice").

Moreover, it is easy to see, as the OCCA did, that the decision to withhold this evidence was likely a strategic choice by trial counsel.  (Doc. 19, at Ex. 5, at 31).  None of the listed evidence goes to Petitioner's guilt or innocence of the crimes for which he was convicted: second degree rape and possession of child pornography.  (R., at 31).  All of the evidence was known to counsel and Petitioner at the time of trial.  (Doc. 19, at Ex. 2, at 4).  "[W]here it is shown that a particular decision was, *in fact,* an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (quoting *Strickland*, 44 U.S. at 690).  Petitioner argues that trial counsel should have presented a recording of A.C.'s forensic interview to show that she was "aware of her ability to earn money trafficking herself, [and] was not drugged and sold against her will but in fact SHE set out with the PRIMARY PURPOSE to traffic herself for money."  (Doc. 49, at 33).  He argues that evidence of Crystal Reed's house key "discredits [that] A.C. was taken to a parking lot and raped, establishing [her] character for untruthfulness" (although he does not dispute that they later had sex at the Motel 6), and that evidence of the Motel 6 registration card and the Walmart money transfer "discredits sexual assault" by showing

23

that A.C. did not call the police for three days even though she was "left alone with [a] phone in the room" and a "SOLITARY OPPORTUNITY FOR REFLECTION." (*Id*. at 34-35). It seems strategic, indeed intuitive, that trial counsel declined to present evidence to cast disparagement on the minor victim. The court recommends denying Petitioner habeas corpus relief on these claims in Ground Six.

> **D.    Claims Raised in Grounds One, Two, Three, Five, Six, Seven, Eight, and Nine Are Procedurally Barred From Federal Habeas Review.**

Petitioner raises the following claims in his Petition, Amended Brief in Support, and other supplemental briefing:

- (Ground One): SANE Finney violated Oklahoma law by prescribing medication to A.C. and by conducting the exam in a church (Doc. 49, at 8-11);

- (Ground Two) Petitioner's sentences were improperly enhanced by his prior felony convictions in California (Doc. 1, at 7-9; Doc. 49, at 12-15);

- (Ground Three) the State solicited false testimony and false evidence from Detective Flores (Doc. 1, at 9-10; Doc. 49, at 15-22);

- (Ground Five) ineffective assistance of appellate counsel due to lack of access to the law library (Doc. 1, at Ex. 1, at 1; Doc. 49, at 24-25; *see also* Docs. 41, 43);

- (Ground Six) Petitioner received ineffective assistance of trial counsel because attorney Larry Corrales failed to secure favorable evidence, attorney Teresa Williams "abandoned Petitioner" and failed to obtain a reliability hearing, and attorney Kelly Davis lied to Petitioner regarding the admissibility of A.C.'s forensic interview (Doc. 49, at 27-28);

- (Ground Seven) statements made by A.C. to Officer Kellogg were inadmissible hearsay and the admission of those statements at trial violated Petitioner's rights under the Confrontation Clause (Doc. 1, at Ex. 1, at 2; Doc. 11, at Ex. 1, at 3; Doc. 49, at 29-31);

- (Ground Eight) Petitioner was denied the right to present a complete defense due to trial counsel's failure to present exculpatory evidence and witnesses,

24

specifically the recording of A.C.'s interview with SANE Finney (Doc. 1, at Ex. 1, at 2-3; Doc. 11, at Ex. 1, at 4-8; Doc. 49, at 32-36); and

- (Ground Nine) the State failed to provide all exculpatory and impeaching evidence, specifically the recording of A.C.'s interview with SANE Finney (Doc. 1, at Ex. 1, at 3; Doc. 49, at 36-37).

Petitioner first raised the claims in Grounds One, Two, Three, Seven, Eight, and Nine in his application for post-conviction relief. (Doc. 19, at Ex. 6, at 10-30, 37-39). After the Comanche County District Court denied him post-conviction relief (*id.* at Ex. 8), Petitioner appealed the denial, (*id.* at Ex. 10, at 20-53), and raised new claims relative to Grounds Five and Six in his petition to the OCCA (*id.* at Ex. 10, at 14-19). The OCCA affirmed the state district court's order on appeal and held his claims were procedurally barred from review:

> In his first proposition of error, Petitioner claims that his appellate counsel was ineffective. [Ground Five]. This claim was not included in the post-conviction application presented to the District Court. Because the District Court was provided no opportunity to rule on the claim, it is not properly before us. *See* Rule 5.2, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2021) ("The appeal to this Court under the Post-Conviction Procedure Act constitutes an appeal from the issues raised . . . and the findings of fact and conclusions of law made in the District Court . . . .").
>
> The District Court did not reach the merits of Petitioner's remaining claims because it found that the claims either were, or could have been, presented on direct appeal. This is not an abuse of discretion. "The post-conviction process is not a second appeal. The doctrines of *res judicata* and waiver will apply where a claim either was, or could have been, raised in the petitioner's direct appeal." *Coddington v. State*, 2011 OK CR 21, ¶ 2, 259 P.3d 833, 835.
>
> Petitioner has failed to demonstrate an abuse of discretion by the District Court. Therefore, the order of the District Court denying Petitioner's application for post-conviction relief is **AFFIRMED**.

(Doc. 19, at Ex. 11, at 2-3).[7]

Following this ruling, Petitioner brought a second application for post-conviction relief before the Comanche County District Court, alleging claims of ineffective assistance of appellate counsel on the direct appeal of his conviction for failure to "provid[e] legal research materials" or "research[] predicate felonies, illegal exhibits, and false testimony" or "investigate to identify if medical primacy violates other sections of public policy" and restating the bulk of his arguments previously asserted in his first application for post-conviction relief  (*See* Doc. 41, at Ex. 6, at 3, 9-28).  The state district court denied Plaintiff's second application (*id*. at Ex. 4), and the OCCA upheld the denial on review, finding:

> Petitioner was fully afforded the opportunity for post-conviction relief in his previous applications.  Petitioner has failed to establish entitlement to any relief in this subsequent post-conviction proceeding.
>
> ***
>
>      Petitioner's propositions of error either were or could have been raised in his previous application for post-conviction relief, and are thus barred by *res judicata* or waived.  22 O.S. 2011, § 1086; *Fowler*, 1995 OK CR 29, ¶ 2, 896, P.2d at 569.  He has not established any sufficient reason for not asserting or inadequately raising his current grounds for relief in his previous application for post-conviction relief.  *Id*.  Therefore, the order of the District Court of Comanche County denying Petitioner's subsequent application for post-conviction relief in Case No. CF-2018-490 should be, and is hereby, **AFFIRMED.**

---

[7] The OCCA's ruling does not explicitly reference Petitioner's Ground Six claims, which were also first brought in Petitioner's appeal of the denial of his post-conviction application.  Respondent argues the OCCA implicitly found these arguments to be procedurally barred.  (Doc. 19, at 66).  Regardless, these claims relative to Ground Six would now be barred by the anticipatory procedural bar.  *See* Section IV.E.

(Doc. 41, at Ex. 1, at 2-3).

### 1.    The OCCA's Procedural Default Of Petitioner's Claims Was Independent And Adequate.

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1727 (2022). "Under the doctrine of procedural default, claims that are defaulted in state court on adequate and independent state procedural grounds will not be considered by a habeas court." *Simpson v. Carpenter*, 912 F.3d 542, 570 (10th Cir. 2018) (internal quotation marks, alteration, and ellipsis omitted); *see also Martinez v. Ryan*, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."). "A state procedural default is 'independent' if it relies on state law, rather than federal law." *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008). "A state procedural default is 'adequate' if it is firmly established and regularly followed." *Id.*; *see Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002).

The OCCA's waiver rule, which the OCCA applied to Petitioner's claims raised in Grounds One, Two, Three, Seven, Eight, and Nine, is based on Oklahoma state law and is "considered 'independent' for purposes of federal habeas review." *Cole v. Trammell*, 755 F.3d 1142, 1159 (10th Cir. 2014); *see also Padillow v. Crow*, 2022 WL 1763391, at *3 (10th Cir. June 1, 2022) (affirming district court's finding that the petitioner's claims were procedurally barred because he had failed to raise them on direct appeal and thus "they

27

were waived under Oklahoma law"); *Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013) ("[I]ssues that were not raised previously on direct appeal, but which could have been raised, are waived for further review."). Except for some situations involving ineffective assistance of trial counsel, "Oklahoma's [waiver rule] meets the adequacy requirement." *Banks v. Workman*, 692 F.3d 1133, 1145 (10th Cir. 2012).

As for the OCCA's finding of procedural default of Petitioner's claims in Ground Five, it is well-established that the procedural bar set forth in Oklahoma's Post Conviction Procedure Act, Okla. Stat. tit. 22, § 1086, is an independent and adequate procedural bar. *See, e.g., Medlock v. Ward*, 200 F.3d 1314, 1323 (10th Cir. 2000) ("Despite the especially vigilant scrutiny we apply in examining procedural bars to ineffective assistance claims, we have held that Oklahoma's procedural bar to claims not raised on initial post-conviction review is independent and adequate.").

Thus, the OCCA's holding that Petitioner had waived review of his claims was based on an independent and adequate state procedural rules.

### 2.    Exceptions to Procedural Default

A federal court may consider claims that have been defaulted in state court on adequate and independent state procedural grounds only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."

28

*Maples v. Thomas*, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). Petitioner must show "prejudice arising from the errors that form the basis of [his] *substantive* claims" in order to establish the prejudice prong. *Smith v. Allbaugh*, 921 F.3d 1261, 1271 (10th Cir. 2019) (internal quotation marks omitted).

The fundamental miscarriage of justice exception to procedural default is "a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (internal quotation marks and alteration omitted). The Supreme Court instructs that "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup*, 513 U.S. at 316).

### 3.    Petitioner's Assertion Of Cause Cannot Overcome The Procedural Default, And He Does Not Argue A Fundamental Miscarriage of Justice.

Petitioner argues that he did not bring his claims relative to Grounds Two, Three, Seven, Eight, and Nine on direct appeal because appellate counsel did not raise them

29

(Ground Five).  (Doc. 1, at 8-9; Doc. 1, at Ex. 1, at 2-3).[8]  Petitioner further states that he did not bring his ineffective assistance of appellate counsel claim (Ground Five) in his first application for post-conviction relief filed in the district court due to "[m]isconstruction of rules" and states that he "provided ground five during post-conviction <u>appeal</u> brief and not in the brief in support of Application for Post-Conviction Relief." (Doc. 1, at Ex. 1, at 1) (emphasis added).   Indeed, the OCCA declined to consider Petitioner's ineffective assistance of appellate counsel claims on these procedural grounds.  (Doc. 19, at Ex. 11, at 2).  "[A]n ineffective-assistance claim can serve as cause to excuse a procedural default only if that claim is not itself procedurally defaulted." *Wilson v. Allbaugh*, 737 F. App'x 413, 417 (10th Cir. 2018) (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).

Petitioner has subsequently developed the argument that his ineffective assistance of appellate counsel claim was included in a later version of his first application for post-conviction relief and "GEO Corrections withheld the proper version and mailed the rough draft." (*See* Doc. 41, at 3; *id*. at Ex. 6, at 8).  Petitioner does not explain, however, why he did not raise this issue with the state district court, or in his appeal of the denial of his first post-conviction application to the OCCA, or in his Petition or Amended Brief in this court. The undersigned is not persuaded.  Because Petitioner has not shown cause for his procedural default of these claims in state court, the undersigned need not address whether he suffered actual prejudice.  *See Simpson*, 912 F.3d at 571 ("[Petitioner] must establish

---

[8] Petitioner cites no reason for his failure to assert his claim relative to Ground One on direct appeal and erroneously alleges his claims relative to Ground Six are barred by *res judicata*. (Doc. 1, at Ex. 1, at 1).

both cause and prejudice to overcome the state procedural bar, and [the court] must reject his . . . claim if he fails to show either requirement.").

Petitioner neither invokes the fundamental miscarriage of justice exception nor presents any new evidence that he is actually innocent. *Cf. Rushing v. Havernek*, 2022 WL 17333067, at *2 (10th Cir. Nov. 30, 2022) ("[A]lthough [the petitioner] invokes the miscarriage-of-justice exception, he identifies nothing suggesting, as the exception requires, 'that he is actually innocent of the crime of conviction.'") (quoting *Pacheco v. El Habti*, 48 F.4th 1179, 1186 (10th Cir. 2022)).   Petitioner thus fails to overcome the procedural bar of his claims.

The OCCA correctly ruled that Petitioner's claims raised in Grounds One, Two, Three, Five, Seven, Eight and Nine are subject to a procedural default.  Petitioner has not established cause or a fundamental miscarriage of justice to overcome this bar.  The court should therefore deny habeas corpus relief on these claims.

> **E.      Petitioner's Claims Raised in Grounds Four, Five, Six, and Eight Are Unexhausted and Should Be Denied Pursuant to an Anticipatory Procedural Bar.**

Finally, Petitioner raises the following claims in the instant Petition, Amended Brief in Support, and other supplemental briefing:

- (Ground Four) insufficiency of the evidence to support Count Two of his conviction; that the SANE report violates Oklahoma law and "several public acts based on the current adjudication of medical primacy in conjunction with circumstances surrounding the instant case," and as it concerned Petitioner's testimony as to A.C.'s age, that "[c]onstitutionally infirm counsel refused to apply district court rule 5(k), 12 O.S. § 2806, in conjunction with OUJI-CR 9-20[.]"  (Doc. 1, at 11; Doc. 49, at 22-24);

- (Ground Five) ineffective assistance of appellate counsel for failure to raise claims asserted in Grounds One and Four (Doc. 41, at 6-7); "Petitioner has been denied his right to OCCA Rule 3.4(e)" resulting in an "unreasonable application of the doctrine of waiver" and a violation of "Petitioner's due process and equal protection rights" (Doc. 43, at 2); and the "OCCA unreasonably applied clearly established federal law" through "unreasonable application of the doctrines of procedural bar" (*id*. at 5);

- (Ground Six) ineffective assistance of trial counsel by Kelly Davis for failing to present certain witness testimony (Doc. 49, at 28); and

- (Ground Eight) Petitioner was denied the right to present a complete defense, specifically evidence of two toll violations, a house key, a witness, the Motel 6 registration card, a receipt for clothing purchased for A.C., a money transfer, and a photo of A.C. in bed at the Motel 6 (Doc. 49, at 32-36).

### 1.    Habeas Petitioners Must First Exhaust Available State Remedies.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, —— U.S. ——, 137 S. Ct. 2058, 2064 (2017). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). "Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the 'substance' of the federal claim in state court.'" *Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006)); *see also* 28 U.S.C. § 2254(b)(1)(A).  This means "a federal habeas petitioner [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Williams v. Trammell*, 782 F.3d 1184, 1210 (10th Cir. 2015) (stating that fair presentation "requires that the petitioner raise in state court the

substance of his federal claims . . . includ[ing] not only the constitutional guarantee at issue, but also the underlying facts that entitle a petitioner to relief") (internal quotation marks and citation omitted). "[T]he crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012). "A petitioner need not invoke 'talismanic language' or cite 'book and verse on the federal constitution.'" *Id.* (quoting *Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989)). But a "'[f]air presentation' requires more than presenting 'all the facts necessary to support the federal claim' to the state court." *Bland*, 459 F.3d at 1011 (quoting *Anderson*, 459 U.S. at 6).

A review of the record shows that Plaintiff did not raise the claims outlined above in Grounds Four, Five, Six, and Eight at any time in state court, and therefore they are unexhausted in this court.

### 2. Claims That Are Unexhausted and That Would Be Barred When Presented to the OCCA Are Subject To an Anticipatory Procedural Bar.

If a claim is unexhausted, a federal court generally dismisses it without prejudice "so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 892 (10th Cir. 2018) (internal quotation marks omitted). But, "dismissal without prejudice for failure to exhaust state remedies is not appropriate if the state court would now find the claims procedurally barred on independent and adequate state procedural grounds." *Id.* (internal quotation marks omitted). "[I]n appropriate circumstances the court can apply an 'anticipatory procedural bar' to functionally transform unexhausted claims

33

into exhausted ones, thus obviating the need to dismiss a mixed petition." *Fontenot v. Crow*, 4 F.4th 982, 1019 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022).

Petitioner's unexhausted claims are subject to an anticipatory procedural bar. As discussed above, Petitioner previously filed a direct appeal and two post-conviction actions in the Oklahoma courts. If Petitioner were to return to state court to exhaust his claims, he would be raising them in a third application for post-conviction relief. "Oklahoma requires a post-conviction relief applicant to raise all grounds for relief which he actually knows or should have known through the exercise of due diligence in his original application for relief." *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015); *see also* Okla. Stat. tit. 22, § 1086. "This rule is rooted solely in Oklahoma state law and is regularly and even-handedly applied by the state courts, making it both independent and adequate." *Fontenot*, 4 F.4th at 1024 (internal quotation marks and citations omitted).

Because Petitioner's claims are presented for the first time in this habeas action and could have been raised in the state courts, application of an anticipatory procedural bar is appropriate. *See, e.g.*, *Cummings v. Sirmons*, 506 F.3d 1211, at 1222-23 (10th Cir. 2007) ("readily" concluding that ineffective assistance of trial counsel claim, raised for the first time in habeas petition and thus unexhausted, was procedurally barred: "[a]lthough the claim is technically unexhausted, it is beyond dispute that, were Cummings to attempt to now present the claim to the Oklahoma state courts in a second application for post-conviction relief, it would be deemed procedurally barred" (citing Okla. Stat. tit. 22, §§ 1086, 1089(D)(2))).

**3. Petitioner Does Not Demonstrate Cause And Prejudice Or A Fundamental Miscarriage Of Justice Sufficient To Overcome The Procedural Bar Of His Claims.**

As set forth above, a petitioner can overcome procedural default by establishing either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. Petitioner has not alleged — much less shown — cause for his failure to present these unexhausted claims to the state court. Because he has not shown cause, the court need not address whether he suffered actual prejudice. *Simpson*, 912 F.3d at 571. Likewise, Petitioner neither asserts a fundamental miscarriage of justice argument nor meets the standard because he does not present any new evidence of his innocence. The court should therefore deny habeas corpus relief on Petitioner's claims raised in Grounds Four, Five, Six, and Eight.

**V.     Recommended Ruling and Notice of Right to Object.**

For the reasons discussed above, the undersigned recommends that the Petition for habeas relief (Doc. 1) be **DENIED** on all grounds.

**The court advises the parties of their right to object to this Report and Recommendation by April 27, 2023,** under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 6th day of April, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

36